Ortiz Carrión, Juez Ponente
*954 TEXTO COMPLETO DE LA SENTENCIA
La señora Ana Belén Meléndez y la sociedad legal de gananciales que tuvo constituida con su difunto esposo Angel L. Agosto acuden a este Tribunal, mediante recurso de apelación, y solicitan se revoque la sentencia sumaria parcial final dictada por el Tribunal de Primera Instancia, Sala Superior de Bayamón, a favor del Hospital Alejandro Otero López en el caso del título. 
Por los fundamentos que más adelante se exponen, se confirma la sentencia apelada. Para sostener estos fundamentos haremos una breve relación de los hechos pertinentes que no están en disputa, y una relación del trasfondo procesal del caso.
I
El 23 de agosto de 1988, el señor Angel L. Agosto tuvo un accidente de tránsito en el cual sufrió múltiples traumas. El señor Agosto recibió atención médico-hospitalaria en el Centro de Diagnóstico y Tratamiento de Vega Baja, el Hospital Alejandro Otero López y el Hospital Wilma Vázquez. Luego, el 1 de enero de 1989, el señor Agosto falleció en el Hospital de Veteranos.
El 3 de agosto de 1993, la señora Ana Belén Meléndez, viuda del señor Agosto, por sí y en representación de sus hijos menores de edad presentó una demanda contra el Centro de Diagnóstico y Tratamiento de Vega Baja, el Hospital Alejandro Otero López, el Hospital Wilma Vázquez, el Hospital de Veteranos y varios doctores que alegadamente atendieron al señor Agosto después del accidente. En la demanda también se incluyeron como demandantes a Joan Denisse Agosto Meléndez y a la sociedad legal de gananciales que la señora Meléndez Meléndez tuvo constituida con el señor Agosto, así como varios demandados de nombre desconocido. La demanda luego se enmendó para incluir al Estado Libre Asociado de Puerto Rico y al Municipio de Vega Baja. La reclamación contra el Hospital de Veteranos fue desistida.
Posteriormente, el 4 de diciembre de 1995, el Hospital Alejandro Otero López presentó una moción de sentencia sumaria en la cual solicita la desestimación de la demanda en su contra. Esta moción hace referencia a una serie de documentos en apoyo de los hechos que se enumeran como incontrovertidos. El 19 de enero de 1996, la parte demandante compareció a oponerse a lo solicitado por el Hospital Alejandro Otero López. Sin embargo, no presentó ningún documento o declaración jurada para sostener su oposición.
El 26 de febrero de 1996, el tribunal a quo dictó la sentencia sumaria apelada disponiendo lo siguiente:

"Luego de analizar los hechos no controvertidos y el derecho aplicable a este caso, este Tribunal concluye que existe base suficiente para desestimar la acción incoada por la co-demandante Ana Belén Meléndez Meléndez por sí y en representación de la Sociedad Legal de Gananciales compuesta por ella y el Sr. Angel L. Agosto, por haber transcurrido el término prescriptivo dispuesto por el Código Civil.

Además, visto que los demandantes no cuentan con prueba que evidencie nexo causal entre las actuaciones de la co-demandada HAOL [Hospital Alejandro Otero López] y los daños causados por el fallecimiento del Sr. Angel L. Agosto procede se dicte Sentencia Parcial desestimando la reclamación de todos los demandantes, en cuanto al co-demandado HAOL respecta." (Enfasis Suplido.)
En su dictamen, el tribunal a quo concluyó expresamente que no existía razón para posponer dictar sentencia sobre la reclamación contra el Hospital Alejandro Otero López hasta la resolución total del pleito, y ordenó expresamente que se registrara la misma. Oportunamente, la señora Meléndez Meléndez presentó su apelación en la cual señala que el tribunal a quo incurrió en los siguientes errores:

"1. [Al] [djictar sentencia sumaria, adjudicando negligencia sin permitir el desfile de prueba 
*955
pericial de esta parte, ni considerar la evidencia pericial en autos.

2. Al dictar Sentencia Sumaria sin seguir los criterios del Tribunal Supremo respecto a issues [sic] de negligencia.

3. Al declarar CON LUGAR la misma, en contra de las doctrinas vigentes establecidas por el Tribunal Supremo en cuanto a Sentencia Sumaria y sin haber dado la oportunidad a la demandante-apelante de presentar evidencia producto del descubrimiento autorizado y pautado para el 11 de marzo de 1996." (Nota al calce omitida.)

Ante tal arbitrariedad, optamos por no solicitar reconsideración de la sentencia al foro de instancia."

El 6 de mayo de 1996, el Hospital Alejandro Otero López presentó su oposición al recurso. Una vez sometidos los alegatos de las partes, este Tribunal ordenó que se elevaran los autos, los cuales fueron elevados, por lo que estamos en posición de resolver.
II
Los argumentos esgrimidos por la apelante están dirigidos a cuestionar el uso de la sentencia sumaria para disponer de la reclamación contra el Hospital Alejandro Otero López. A tales efectos cita in extenso la doctrina establecida por el Tribunal Supremo de Puerto Rico sobre ese procedimiento. En particular, la señora Meléndez Meléndez plantea que por tratarse de un caso donde se imputa negligencia el tribunal a quo no debió utilizar el procedimiento de sentencia sumaria.
Por último, plantea que el tribunal a quo debió examinar los autos del caso antes de determinar si procedía dictar sentencia sumaria a favor de la parte promovente y señala lo siguiente:

"Ante esta total ausencia de prueba de sus alegaciones, entendemos que no se nos ha enfrentado con declaraciones que nos impongan un deber de refutar. El promovente de una Sentencia Sumaria tiene el peso de la prueba.

El Tribunal Superior de Bayamón no ha seguido las pautas establecidas por el Tribunal Supremo de Puerto Rico en la adjudicación sumaria de este caso, negándose a escuchar al apelante ni permitir el desfile de prueba producto del descubrimiento autorizado.

El solucionamiento [sic] justo de esta controversia será cuando ambas partes tengan la oportunidad de ser escuchadas. Mientras tanto se le ha robado al apelante su oportunidad de defenderse, de presentar su versión de la controversia y lo más [sic] importante, su día en corte." (Nota al calce omitida).
A tales efectos, la apelante alega que desde el 12 de mayo de 1994, en los autos había un informe pericial del doctor Benito Colón y que ella "no tuvo conocimiento de la negligencia hasta el mes de julio de 1993, debido a que no tenía los medios para pagar por una evaluación pericial del caso. A raíz de una evaluación médica en ese mes se enteró que hubo negligencia."
Sin embargo, no plantea ni argumenta expresamente que el tribunal a quo erró al desestimar su demanda contra el Hospital Alejandro Otero López por estar prescrita. 
III
La Regla 36.2 de las de Procedimiento Civil autoriza a las partes a presentar una moción, basada o no en declaraciones bajo juramento, para solicitar que se dicte sentencia sumaria a su favor sobre toda o parte de la reclamación. En Cintrón v. E.L.A., 90 J.T.S. 128, pág. 8234, el Tribunal Supremo de Puerto Rico reconoce que un demandado puede presentar una moción de sentencia sumaria para solicitar que se dilucide su defensa de prescripción alegando que ésta surge de hechos sostenidos por declaraciones juradas o documentos que no pueden ser controvertidos por el demandante. Véase además, Comunidad Agrícola Bianchi v. Tribunal Superior, 99 D.P.R. 376 (1970). En el caso de autos, la sentencia sumaria dictada por el tribunal a quo, en cuanto a la reclamación de la señora Meléndez Meléndez contra el Hospital Alejandro Otero López, no está basada en una determinación *956 de ausencia de negligencia sino en una determinación de prescripción de la acción.
Los hechos sobre los cuales el tribunal a quo sostiene su decisión surgen de las propias declaraciones de la señora Meléndez Meléndez en una deposición que 1¿ fuera tomada como parte del procedimiento de descubrimiento de prueba en el caso del título. Además, en su apelación la señora Meléndez Meléndez no cuestionó las determinaciones de hecho pertinentes al asunto:

"23. La demandante Ana Belén Meléndez Meléndez, es enfermera graduada de profesión y durante la estadía de su esposo en los distintos hospitales y centros de servicio médico, tuvo oportunidad y en efecto, habló con varios facultativos médicos y otro personal de salud, en cuanto a la condición y tratamiento que se le estaba brindando a su esposo. Durante todo momento, la demandante estuvo informada de los procedimientos a serle efectuados a su esposo, así como de la condición delicada en que se encontraba. Así se desprende de la deposición tomada a la señora Meléndez en el caso.

24.De la deposición tomada a la demandante surge que en Sala de Emergencia de HAOL [Hospital Alejandro Otero López], le entregaron unas placas tomadas al señor Agosto para que las entregara en el Hospital Wilma Vázquez y ella admite que no hay lectura escrita de las placas en el récord del paciente, porque ella se quedó con las placas y no las entregó.

25. La demandante alega que una vez falleció su esposo, ésta cayó en un estado depresivo que le obligó a tomar varios medicamentos y eventualmente a ser recluida en Mepsi Center. La co-demandante fue recluida el 19 de junio de 1989 y permaneció allí durante cinco (5) días. Una vez dejó Mepsi Center, se mantuvo en tratamiento ambulatorio hasta octubre del 1989 y desde entonces no volvió a recibir tratamiento similar, ni ha [sic] requerir hospitalización. Comenzó a trabajar, [sic] nuevamente en septiembre de 1989.

26. Poco después del fallecimiento del señor Agosto, la demandante obtuvo copia del expediente médico del Hospital Wilma Vázquez. Al leerlo, cosa que ocurrió a principios del 1989, la señora Meléndez "estaba en duda" en cuanto a si había pasado algo malo en el tratamiento recibido por su esposo. Sin embargo, no hizo gestión alguna para aclarar las dudas que tenía.

27. Cuando salió de Mepsi Center, la demandante permaneció algún tiempo en reposo en su casa y volvió a trabajar en septiembre de 1989. Desde ese momento, trabajó continuamente hasta diciembre de 1991, sin necesidad de tomar ningún tiempo de enfermedad, por razones de salud mental. Su retiro en diciembre de 1991 respondió a consideraciones personales, no relacionadas con su estado anímico o de salud. Cuando la demandante, señora Meléndez se retiró en diciembre de 1991 decidió quedarse en su casa durante un año y medio. Al cabo de este término, comenzó a trabajar nuevamente con Head Start.

28. No es hasta el verano de 1992 ó 1993, tres (3) o más años después del fallecimiento del señor Agosto, cuando la co-demandante Ana Belén Meléndez conversó, casualmente, con un ex-compañero suyo de escuela superior, licenciado Cruzado, en una reunión de su clase, y éste le indicó que podría haber alguna posibilidad de negligencia médica en el tratamiento recibido por su esposo, que esta [sic] inicia alguna gestión inteligente encaminada a indagar sobre las causas del fallecimiento de su esposo. No es hasta este momento en que por circunstancias fuera de su control o deseo, que [sic] la demandante se preocupa en indagar con un perito para que éste evalúe el expediente médico del señor Agosto.

29.La demandante no ha presentado explicación alguna para demostrar que, [sic] las circunstancias que alegadamente le impidieron realizar, esta misma evaluación con un perito con anterioridad, cambiaron para 1993.

30.Finalmente, el perito emitió su opinión en julio de 1993 y es entonces, en agosto de 1993, casi cinco (5) años después del fallecimiento del señor Agosto es que los demandantes presentan su demanda contra la aquí compareciente.

31.La señora Meléndez no expresó, ni en su demanda, ni en la toma de su deposición, razón válida alguna para no haber presentado la demanda dentro del término prescriptivo que dispone el 
*957
Código Civil. La co-demandada HAOL [Hospital Alejandro Otero López] jamás le negó acceso a los expedientes médicos de su esposo; por el contrario, la demandante obtuvo copia de los mismos desde 1989.

32. Tampoco existe alegación o evidencia alguna de que con posterioridad a la muerte del señor Agosto, la co-demandada HAOL [Hospital Alejandro Otero López] incurriera en conducta alguna que le impidiera a la señora Meléndez o a cualquier representante suyo, averiguar los detalles de lo sucedido durante la estadía del señor Agosto en el Hospital del co-demandado.

33. En agosto de 1993, la señora Meléndez presentó por sí y en representación de la Sociedad Legal de Gananciales compuesta por ella y el Sr. Angel L. Agosto y por sus hijos menores de edad, Luis Ornar Agosto Meléndez y Leslie Ann Agosto Meléndez, la demanda que da curso al presente procedimiento. Joan Denisse Agosto Meléndez compareció también como demandante e hija mayor de edad de Angel L. Agosto en la anterior demanda."

Corresponde dilucidar si, conforme a las determinaciones de hechos antes expuestas sobre los cuales no existe controversia, la reclamación de la señora Meléndez Meléndez contra el Hospital Alejandro Otero López está prescrita. 
IV
Las acciones de responsabilidad civil por mala práctica médica se rigen por el Artículo 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 5141. A su vez, el Artículo 1868 del Código Civil, 31 L.P.R.A. see. 5298, establece que estas acciones prescriben al año "desde que lo supo el agraviado" y el Artículo 1869 del Código Civil, 31 L.P.R.A. see. 5299, establece que el plazo prescriptivo se contará desde el día en que la acción se pudo ejercitar.
En Colón Prieto v. Géigel, 115 D.P.R. 232, 243 (1984), el Tribunal Supremo de Puerto Rico señala que:
"La institución de la prescripción extintiva aspira a asegurar la estabilidad de la propiedad y la certidumbre de los demás derechos. Su innegable necesidad y valor responden a "una presunción legal de abandono, derivada del hecho del transcurso de un tiempo determinado sin reclamar un derecho". Sin embargo, ninguno de los intereses a los cuales responde es absoluto —de un lado salvaguardar un derecho y del otro darle carácter definido a la incertidumbre de una posible reclamación— sino que deben ser aquilatados en su justa proyección. (Citas Omitidas.)
Al interpretar el sentido de la frase "desde que lo supo el agraviado", el Tribunal Supremo señala lo siguiente:

"Primeramente, debe notarse que la frase "desde que lo supo el agraviado" es con referencia a la responsabilidad civil ex delicto. Segundo, la doctrina rechaza una interpretación literal y restrictiva. Así, Borrell Maciá explica que "prescribe por el transcurso de un año a contar desde que lo supo el agraviado; y pudo ejercitar la acción, añade la jurisprudencia.... El aditamento de la jurisprudencia es lógico, y está de acuerdo con los principios generales que regulan la prescripción. Si ésta tiene su fundamento al establecer la pérdida de derechos, en el abandono del que los posee, precisa que realmente se de tal abandono; y si no puede ejercitarse la acción, no puede decirse que exista.... Por ello parece que hasta tal momento no debería iniciarse el plazo de prescripción, ya que es igual no poder ejercitar las acciones por imposibilidad física o ignorancia del hecho causante del... perjuicio, que por ignorar que se tienen. Naturalmente que si la ignorancia de que se trata fuese debida a negligencia o descuido del interesado, a nadie más que a él podrían atribuirse las consecuencias de tal descuido, y no parecería lógico, en tal caso, una reserva de derechos o un aplazamiento en el inicio del plazo de prescripción. Borrell Maciá, op. cit., págs. 344-345. Igualmente, Santos Briz, al comentar una sentencia española, consigna que "para que la justicia quede a salvo en todo caso, con que el agraviado haya sabido de la obligación de reparar daños, se ha de requerir, además, que haya podido ejercitar la acción".... La brevedad del plazo justifica este criterio. J. Santos Briz, Derecho de Daños, Madrid, Ed. Rev Der. Privado, 1963, pág. 293 esc. 66.

Esta orientación parte de la premisa de que la ignorancia del titular del derecho sobre si ha *958 nacido o no una acción derivada de un acto ilícito es pertinente y determinante. Adopta la tesis subjetiva frente a la objetiva..." (Enfasis Suplido.)
Id., págs. 244-45.
Asimismo, en López v. Autoridad de Carreteras, 93 J.T.S. 64, pág. 10659, el Tribunal Supremo expresa lo siguiente sobre la identidad del autor del daño:
"En la doctrina civilista, cuando se examina lo relativo a la prescripción de las acciones civiles torticeras, la tendencia más liberal, por consideraciones de justicia, es la de requerir que fuese conocible la identidad del autor del daño para que pueda correr el término prescriptivo. La correspondiente postergación del término prescriptivo supone que el reclamante no sabía ni podía saber quién fue el autor. Pero si no hay un elemento fáctico o material que impida conocer quién es el responsable, si el desconocimiento se debe a la falta de investigación o diligencia del reclamante, entonces no procede este requisito sobre la identidad del autor que en la doctrina liberal se ha sobreimpuesto a la normativa sobre la prescripción. "(Enfasis suplido.)
Basándonos en esta doctrina, debemos concluir que la reclamación de la señora Meléndez Meléndez contra el Hospital Alejandro Otero López está prescrita. En su demanda, la señora Meléndez Meléndez alegó que no fue hasta julio de 1993 que tuvo conocimiento de la negligencia "debido a que no tenía los medios para pagar por una evaluación pericial". Ni en su oposición a la moción de sentencia sumaria, ni en su recurso ante este Tribunal la señora Meléndez Meléndez alega que ella efectuara alguna gestión para obtener una evaluación antes de esa fecha. El desconocimiento o ignorancia de la señora Meléndez Meléndez se debió a su falta de diligencia. Colón Prieto v. Géigel, supra. Según surge de las determinaciones de hechos1, no controvertidas por la apelante, ella es una enfermera graduada y, mientras su esposo recibía tratamiento en los distintos hospitales y centros de servicio médico, habló con varios doctores y otro personal sobre la condición y el tratamiento que se le estaba brindando. Asimismo, surge que el Hospital Alejandro Otero López nunca le negó acceso a los expedientes médicos de su esposo, y que desde el 1989 la señora Meléndez Meléndez obtuvo copia de esos expedientes. También surge de las determinaciones de hecho que no fue hasta el verano de 1992 ó 1993, luego de que la señora Meléndez Meléndez conversó con el licenciado Cruzado sobre el fallecimiento de su esposo, que ella se preocupa en indagar con un perito para que evalúe el expediente médico del señor Agosto. El Tribunal Supremo reiteradamente ha señalado que cuando el desconocimiento que impide ejercer una acción se debe a la falta de diligencia del perjudicado, el plazo prescriptivo no se extiende indefinidamente. Vega Lozada v. J. Pérez & Cía, Inc., 94 J.T.S. 56; López v. Autoridad de Carreteras, supra.
Por los fundamentos antes expuestos, se confirma la sentencia apelada.
Lo acuerda y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97DTA37
1. En el recurso, se identifica a los comparecientes como "Ana Belén Meléndez y la Sociedad Legal de Gananciales". Resulta necesario aclarar que la sociedad legal de gananciales integrada por la señora Ana Belén Meléndez Meléndez y el señor Angel L. Agosto se extinguió con la muerte del señor Agosto (Q.E.P.D.). La muerte de uno de los cónyuges extingue la sociedad legal de gananciales. Artículo 1315 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 3681; Pilot Life Insurance Co. v. Crespo Martínez, 94 J.T.S. 104; Pacheco Otero v. Eastern Medical Associates, Inc., 94 J.T.S. 49. De este modo, los bienes de la sociedad pasaron a ella y a los herederos de su esposo en partes alícuotas.
2. Debemos advertir que en los autos elevados a este Tribunal sólo aparece el documento identificado como Exhibit B. De la certificación preparada por el Tribunal de Primera Instancia surge que los documentos identificados en la solicitud de sentencia sumaria como Exhibit A, Exhibit C, Exhibit D y Exhibit E no aparecen *959 en el expediente elevado ante este Tribunal. Sin embargo, para disponer del recurso ante nuestra consideración no es necesario examinar tales documentos.
3. Aun cuando este Tribunal no está obligado a considerar los méritos de tal señalamiento, más adelante discutimos porqué el mismo no tiene fundamento en derecho. Debemos advertirle al apelante que en Quiñones López v. Manzano Pozas, 96 J.T.S. 95, el Tribunal Supremo de Puerto Rico reiteró la norma de que la sola alegación de un error, que luego no se fundamenta o discute no debe ser motivo para revisar, modificar o de alguna forma cambiar una decisión de un tribunal de instancia.
4. Resulta oportuno señalar que, contrario a lo afirmado en el recurso de apelación, el informe del doctor Benito Colón no consta en los autos del caso, por lo que su presentación como parte del apéndice resulta impropia. De la Moción Informativa que se incluye sobre ello, se desprende que el mismo no se presentó ante el tribunal a quo. En este sentido la apelante no tiene base para argumentar que ese informe debió ser considerado por el tribunal a quo.